**H.B. FULLER COMPANY, Plaintiff,**

v.

**NATIONAL STARCH & CHEMICAL CORPORATION, Defendant.**

**Civ. A. No. 80–454–JLL.**

United States District Court,
D. Delaware.

Sept. 27, 1984.

Paul E. Crawford of Connolly, Bove, Lodge & Hutz, Wilmington, Del., Alan G.

Carlson of Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, Minn., and Susan F. Marrinan of H.B. Fuller Co., St. Paul, Minn., of counsel, for plaintiff.

Peter M. Sieglaff of Potter Anderson & Corroon, Wilmington, Del., and Herbert F. Schwartz, David J. Lee, and Richard A. Inz of Fish & Neave, New York City, of counsel, for defendant.

## OPINION

LATCHUM, Senior District Judge.

This patent case is before the Court on the defendant's motion for summary judgment and, in the alternative, for a separate trial on the two issues discussed in its summary judgment brief. (Docket Item ["D.I."] 157.) Because there are unresolved factual issues in the case and because there appears to be little merit in bifurcating trial, the defendant's alternative motion will be denied.

## I. FACTS

The patent in suit is for an adhesive composition and the use of that composition in combination with sanitary napkins. (D.I. 158 at 6; D.I. 171 at 8–9.) During the 1970s, the production of new adhesives made it possible for manufacturers to make sanitary napkins which could be affixed directly to the inside of a woman's undergarment. This development became a genuine commercial success and hence the focus of this litigation.

The plaintiff, H.B. Fuller Company ("Fuller"), is the assignee of the challenged patent.[1] The application upon which the patent issued ("the CIP application") was filed in January 1977 and was a continuation in part of a June 1975 application ("the patent application"). The defendant, National Starch & Chemical Corporation ("National"), is one of Fuller's competitors in the production and marketing of adhesives.

In the mid-1970s both parties were vying for the business of the Kimberly-Clark Corporation ("Kimberly-Clark"), a manufacturer of sanitary napkins. (D.I. 171 at 7–8.) Fuller succeeded in producing the adhesive that Kimberly-Clark preferred. (D.I. 172 at affidavit I, appendix 8.) National, however, after a sustained period of frustration in its own research and development efforts, determined in 1976 that the "[b]est chance for immediate business [with Kimberly-Clark] is [to produce an] exact match for current Fuller [adhesive], flaws and all ...." (*Id.* at affidavit I, appendix 16.) National made the duplication and submitted it to Kimberly-Clark. (*Id.*) Some three years later, Fuller's power to control the use of its adhesive formula became more formidable with the issuance of a patent on its CIP application. (D.I. 158 at appendix B.) In 1980, Fuller filed this suit against National for continuing infringement of that patent. (D.I. 1.)

## II. MOTION FOR SUMMARY JUDGMENT

Before turning to National's two grounds for summary judgment, the legal standard governing summary judgment should be noted. Rule 56(c) of the Federal Rules of Civil Procedure provides that, upon motion of a party, summary judgment shall be rendered if the record before the court shows that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The burden of proving that this standard has been met is upon the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

### A. *National's First Argument*

National contends (D.I. 158 at 30), and Fuller does not deny, that sanitary napkins making use of the now patented adhesive were "on sale," within the meaning of 35 U.S.C. § 102(b),[2] more than a year before

---

**1.** U.S. Patent No. 4,136,699 entitled "Absorbent Article With Adhesive Strip" and, for convenience, the patent and the applications it is based on will be referred to as Fuller's.

**2.** Section 102(b) provides, in pertinent part, "A

the 1977 filing of Fuller's CIP application. This being the case, the "on sale" statutory bar[3] would make Fuller's patent invalid unless the patent can be credited with the earlier filing date of the parent application. Whether the patent can be so credited is a question governed by 35 U.S.C. § 120.

Section 120 states that a patent application will be credited with the filing date of a prior application if the following five criteria are met: (1) the disclosure in the later application contains in clear, concise, and exact terms a full description of the invention and the manner or process of making and using it, the description being such that it both sets forth the best mode contemplated by the inventor for carrying out his invention and enables any person skilled in the art to which the invention is most nearly connected to make and use the invention, see 35 U.S.C. § 112; (2) the patent sought in the later application is on the same invention as that on which the prior application is based; (3) the later application is by the same inventor who filed the prior application; (4) the later application is filed before the patenting, abandonment, or other termination of proceedings on the prior application; and (5) the later application makes specific reference to the prior application.

National's argument addresses only the first of these criteria. National contends that the parent application does not disclose the invention which is claimed in the CIP application and which has been given patent protection. (D.I. 158 at 32–33.) National also asserts that Fuller has the burden of proof on this issue.[4] (*Id.* at 32.)

▇▇▇ Contrary to National's contention, the burden of proof on all aspects of the

validity of the patent rests on National, as the challenger of the patent. 35 U.S.C. § 282; *see, e.g. SSIH Equip. S.A. v. United States Internat'l Trade Comm'n*, 718 F.2d 365, 375 (Fed.Cir.1983); *General Motors Corp. v. United States Internat'l Trade Comm'n*, 687 F.2d 476, 482 (C.C.P.A.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Solder Removal Co. v. United States Internat'l Trade Comm'n*, 582 F.2d 628, 632 (C.C.P.A.1978). To prevail on this first summary judgment argument, then, National must demonstrate that there is no factual dispute about the disclosure and the manner in which the invention works and that as a matter of law the disclosure in the parent application is inadequate to support the patent granted on the CIP application. National has failed to meet its burden in this respect.

Without going into the complexities which characterize the applications and invention, it is sufficient for disposition of this argument to note that the matter in controversy is highly technical and subject to competing interpretations. (*See* D.I. 158 at 32–39; D.I. 171 at 17–25.) In other words, there are key factual issues yet to be resolved by the fact finder after a full consideration of the evidence and summary judgment must thus be denied.

### B. *National's Second Argument*

National proposes a second argument for summarily disposing of the Fuller patent: fraud on the Patent and Trademark Office ("PTO") in prosecuting the patent applications. According to National, Fuller withheld from the PTO certain test results

---

person shall be entitled to a patent *unless* … the invention was … on sale in this country, more than one year prior to the date of the application for patent in the United States." (emphasis added)

**3.** *Id.*

**4.** The authority for this proposition cited by National is one 1972 case from the United States Court of Appeals for the Seventh Circuit. *Frantz Mfg. Co. v. Phenix Mfg. Co.*, 457 F.2d 314, 323–24. The cited passage is somewhat ambigu-

ous, but even if the meaning of it were what National claims, the passage is of no consequence in light of subsequent pronouncements of the United States Court of Appeals for the Federal Circuit which say with great plainness that "a patent shall be presumed valid and the burden of persuasion is and always will remain on the party asserting invalidity." *General Motors Corp. v. United States Internat'l Trade Comm'n*, 687 F.2d 476, 482 (1982) (citations omitted).

which would have had a bearing on the patent examiner's decision to grant the patent. (D.I. 158 at 43–46.) National proceeds to cite a series of cases discussing the standards of practice before the PTO. (*Id.* at 46–50.)

██ What National fails to cite is the relatively new rule for determining whether fraud on the PTO has been committed. The United States Court of Appeals for the Federal Circuit has held, "[e]stablishing that a patent was procured by fraud or with such egregious conduct as to render it unenforceable requires clear, unequivocal, and convincing evidence of an intentional misrepresentation or withholding of a material fact from the PTO." *Orthopedic Equip. Co. v. All Orthopedic Appliances,* 707 F.2d 1376, 1383 (Fed.Cir.1983). As the same court later remarked, this is a heavy burden. *Environmental Designs v. Union Oil Co. of Cal.,* 713 F.2d 693, 698 (Fed.Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). It is one that, not surprisingly, National has failed to carry. A question of intent is always a question of fact, and, because Fuller denies any intent to deceive the PTO (D.I. 171 at 26–29), it is in this case a genuinely disputed question of fact. Summary judgment is obviously inappropriate under these circumstances. *See, e.g., Prochaska v. Marcoux,* 632 F.2d 848, 851 (10th Cir.1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981); *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979); *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors,* 510 F.2d 870, 875 (2d Cir.1975).

### III. MOTION FOR BIFURCATION OF TRIAL

National's motion, in the alternative, includes the request that should summary judgment be denied, a separate trial be conducted on the two defenses of invalidity and unenforceability of the patent raised in its summary judgment motion. (D.I. 157 at 2.) In its brief filed in support of that request, National argues that judicial economy will be furthered by a separate trial on its two defenses that the Fuller patent is invalid because of the "on sale" bar of 35 U.S.C. § 102(b) or because of Fuller's alleged fraud on the PTO. (D.I. 156 at 3–4.)

██ It is true of any case that a separate trial on a dispositive issue might save some time and energy; however, that fact has not led to the routine bifurcation of trial for the simple reason that judicial economy is not the be all and end all of the administration of justice. Justice includes, as Federal Rule of Civil Procedure 42(b) [5] suggests, a consideration of the potential prejudice to the parties in determining whether separate trials should be conducted on the issues in a single case. As indicated by this Court's denial (D.I. 36) of National's previous motion for separate trials on liability and damages (D.I. 28), the Court believes that the overall equities of this case will be better considered and prejudice to Fuller will thus be avoided if the entire case is considered in a single trial. National's request for a separate trial on its two defenses would in this Court's opinion unduly extend the final disposition of this case to Fuller's prejudice and therefore the alternative motion for separate trials on the two issues of invalidity and unenforceability will be denied.

An order will be entered giving effect to the conclusions set forth above.

---

**5.** Rule 42(b) reads, in part: "The court in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue ...."